MARC INVESTIGATION OF A COVERED SITE Is Mr Rimirez here? He's already at Home Department bureau. Come here. MARC INVESTIGATION OF A COVERED SITE Mr. Rimirez. Yes, Your Honors. I'm ready to proceed. What we want the court to focus on is exactly what we are asking for in our declaratory relief action. We want to be declared to be the 29 U.S.C. 1103 Trust of a 29 U.S.C. 1102 Self-Funded Single Employer Plan. This is an issue that has never been decided by any court anywhere. One item that was missing from our briefs, which we did not address, is why this action named only the DOL as a defendant. For the last two years, we've been asking the Department of Labor to recognize us as a Trust of Single Employer Plans. Under 29 U.S.C. 1132D, the DOL has that responsibility to determine the status of an Employee Benefit Plan as an entity. You said that no court has decided this issue. I thought you had an Arkansas determination. It did not decide the issue as to whether or not we were the Trust of Single Employer Plans. I can't address that Arkansas issue now. I was planning on addressing it later. Under 29 U.S.C. 1132D, the DOL has the responsibility to determine what an Employee Benefit Plan is as an entity. An Employee Benefit Plan is comprised of two parts, the plan and its trust. Together, they make an Employee Benefit Plan. Since February 15th of 2002, we've filed numerous complaints, both in Washington and in Pasadena, citing various violations of ERISA. And at each time... Can we talk about Stanley? Yes, Your Honor. Because that goes to our subject matter jurisdiction. I'm... Because if we don't have subject matter jurisdiction, we can't really talk about anything else. Absolutely, Your Honor. We are the... We have 649 plan adoption agreements that named us, UE-VIVA, and myself personally, as the Trustees of the Trust of a Single Employer Plan. Under 502, the Trustees of a plan may bring this action into court. The problem had been that the... So UE-VIVA is the plan? Yeah, no. UE-VIVA is the trust of a single employer plan. It is not the plan. This has been one issue of tremendous confusion. We are only the trust of a single employer plan. That's all we are. We are the bank. We serve no other function other than that. We hold in trust, in this particular case, the insurance policy, and that's all we held. We didn't hold any money at that time. So we are only the trust under 501c9 as a non-profit tax-exempt trust. Now, under... Don't you have to have UE-VIVA as the party here? UE-VIVA is the party, Your Honor, but the trust and the trustees, in this situation, the fate are the same. Because an example is exactly what happened to us in Texas. We, as the trustees, were held responsible, individually, for what happened to the trust and to the plans. Only, the problem is, in Texas, they did not want to recognize the single employer plans. This is right now the subject of a Supreme Court action, which we have already filed. Under Department of Regulation 2510.310101K, the trustees of a trust are also the trustees of the plan itself. You cannot separate them. And that is what the DOL does not want to have separated, and we agree. Our fate is linked with the trust, it's linked with the plans. That's what Donovan wanted to establish in Donovan v. Dillingham, and which he did. That was the Secretary of Labor, and he established that clear line of responsibility. Because you have to have someone finally responsible. We are the responsible party. We're not trying to get out of it. We, in other words, want the courts to recognize that that is exactly what we are. Now, as I said two years ago, since February 15th, we've filed numerous complaints with the Department of Labor as the trustees of the trust of single employer plans. We told them, recognize us as this, and that way we can then force either the DOL to act, or we can take actions on our own. However, the problem is that they did not want to recognize us as this. They told us, we're tired of all of your complaints, the only way that we will recognize you as a trustees of a trust of a single employer plan is you go to a federal district court, and you get declaratory relief saying that that is what you are, and that is the only way in which we will act on any of your complaints. For two years, they have not acted on our complaints, and that is why we're here today. What's even stranger is that the DOL who told us to do this is now opposing this very same action. What I'd like to get also down is to the Article 3 requirements of a declaratory relief action. The DOL says there is no controversy, but there is. The controversy is for two years we have been asking the DOL specifically to give us a determination under 29 U.S.C. 1132D. And for two years, they've absolutely refused. They will not talk to us every time we send something to them. There's no reply. There's one time, however, that we asked for an administrative hearing, and that's the one time we did get a reply. They said, our administrative hearings do not go to that issue. You're going to have to go to a federal district court. Again, this is why we are here. The opposition also says there's no damage attributable to the DOL's actions. It's not actions. In this case, it is inaction. They know what has been going on. They have refused to take any actions. By refusing to take actions, they allow the states to take the assets of the plan, leaving the fiduciaries ourselves responsible for that. The DOL? In the past, the DOL is very well known to have taken over the plans themselves and administer those plans. It's got a long history of doing that. We can also, under 502, if we are recognized as the ERISA fiduciaries, if the DOL does not do it, then we can bring an action, a 502K action, against the DOL, forcing them to do that. But, again, because of the sovereign immunity issue, and 502K has that little gray area of sovereign immunity, we must first establish very clearly that we are the trustees of the trust of a single employer plan that are enabled, and we would then have the standing to bring that action. The last issue is whether or not this action would serve any useful purpose. First, 649 single employers who made contributions deductible and deducted these from their income taxes would now be held subject to penalties and interest from the IRS. They would have all of their deductions disallowed also would be subject to a $25 a day penalty from the DOL, should the DOL decide to do that. If, however, we are granted declaratory relief, the appellants can then be recognized as the trustees of the trust of a single employer plan, and then we would have the standing to go into the DOL office in Pasadena and say, here is clearly an ERISA violation. We want you to take care of this. Then they would be forced to do that. However, we can't do that. The standing must be clear that we are the trustees of the trust of a single employer plan. The other issue is the states would also stop pursuing actions against Uri Viva because all of the states know, especially the state of Texas, who was specifically told by the U.S. Fifth Court of Appeals in the case of Montemayor v. Aetna Life, that states are preempted from regulating self-funded single employer plans. Again, if the states decide, well, we don't want to listen to this, we then, as trustees of the trust of single employer plans, who have an obligation to the plans, can then go to the DOL and say, hey, this is your job. You've got to do it. And if you don't do it, we'll bring a 502 action against you. Yes, Ron. May it please the court, Michael Doyle on behalf of the Department of Labor. Ron, as a district court, and myself in writing the brief, thought this case was about whether or not an opinion letter issued by the Department of Labor is subject to judicial review. And it appears that Mr. Ramirez has shifted the entire case to one about whether or not he as a trustee can sue under 502K to compel the Department of Labor to take some sort of action, having apparently nothing to do with the opinion letter. So it's a bit confusing what the issue here is. But that was not argued below. It certainly wasn't addressed by the district court. It seemed to me that the whole case was about whether or not this opinion letter that we issued to the Arkansas insurance officials created this issue as to whether or not Uviva was a multiple employer welfare arrangement. That was the whole, what the case was about. Now... Can anybody get an opinion letter if Mr. Ramirez decided he wanted an opinion letter? Could he write away and say, this is my version, what do you think of this? He can do that. Whether or not the department will entertain it would be solely within the department's discretion. Do the regulations require or provide for this? The only regulation dealing with Arisa opinion letters is its own internal practice, the regulation 76.1, which I think I said it. I'm not sure it's in the Federal Register, but it is available on the Department of Labor's website. But let me say with respect to this 502k, for this... It seems as if he's already asked for that opinion letter and it's been rejected or they just haven't answered what's... I think that we've taken the position that we did in the Arkansas opinion letter. We take the view that it is a MIWA and it's subject to state insurance regulation. Now... Have you put that in an opinion letter? Yes. The Arkansas opinion letter that's at issue here, we wrote to the Arkansas officials and during the course of the Arkansas proceedings and we made the opinion that under the facts presented to us by Arkansas, this arrangement is a multiple employee welfare arrangement and it is subject to state regulation.  Uviva had a problem with that, they should have litigated it within the Arkansas proceeding or the Texas proceeding and on up through the court systems and if necessary to the U.S. Supreme Court. This is not a dispute between the Department of Labor and the Trustees or Uviva. It's a dispute between them and state insurance officials. And I would add that whether to take an enforcement action under ERISA is something that the Department of Labor has discretion to do or to not do. So the Trustees cannot bring an action under 502k to compel us to take some sort of enforcement proceeding. It's well known under the Supreme Court precedents that agencies have prosecutorial discretion. There's nothing in ERISA that compels us to take some sort of proceeding. We get complaints. ERISA of course is a vast statute that involves fiduciaries, it involves trustees, it involves employees who are the beneficiaries. We receive complaints throughout the course of a year from thousands of people complaining about various aspects or alleged ERISA violations to suggest that a federal district court can compel us to take an enforcement action against one of these cases would go against the whole idea of prosecutorial discretion and it would disrupt ERISA proceedings to a great extent and as well as the Secretary's operations. So there's just not, that wasn't the focus of our briefs because it seemed like the district court proceedings were about whether or not a declaratory judgment could be brought to challenge this opinion matter, not on whether or not a proceeding could be brought under 502k to compel the Department of Labor to take some sort of enforcement action. Now clearly under this Court's cases there is no Article III standing for the trustees to challenge this opinion matter. This opinion matter did not coerce the state officials to take action against EV, but they did that even before they requested the opinion matter. They had already initiated proceedings under state law, under their own state insurance laws. And so any injury with respect to those state proceedings is traceable to the state insurance regulators not to the Department of Labor. And if the trustees are correct then every single opinion matter we issue will be subject to a declaratory judgment action in federal court because typically there's going to be one side or the other is going to be aggrieved by whatever opinion we come up with. If that's the case, if the Department of Labor has to defend in court every single opinion matter it issues then the likely result of that is that we simply won't issue opinion letters anymore and regulated entities will not have the benefit of the Department of Labor's views. So it is very important as a policy matter that this court reject the idea that opinion letters are subject to judicial review. And I think the case is... What about the APA though? The APA I think just like Article III standing requires finality and requires a party aggrieved by the action and I think both of those are lacking. There's not finality under the... Why isn't the opinion letter... Why is it not final? Yeah. Finality of course, you look at whether or not it's the last word on the agency's pronouncement in the matter, whether it's simply interlocutory or whether it's a final decision. And second of all... Treasury issues a lot of those. Is there any law involving treasury rulings? Well there is. The Baller v. Hawke case from the First Circuit involved the Comptroller's Office, which I think was within the Treasury Department. But that case from the First Circuit, Baller's, is pretty much the mirror image of this case. That was a case where the Comptroller's Office issued an opinion letter saying we do not believe that, or I'm sorry, that we do believe that a federal statute preempts law. And the state of Massachusetts brought the action challenging that in federal court. And the First Circuit said this is not a justiciable controversy. The Comptroller's Office's opinion letter does not in any way determine legal rights and it does not coerce anyone into any type of conduct. Whether or not something is a state law is preempted is a question for the federal courts to determine, not for the federal agency. But here the letter has an effect because it essentially authorizes or endorses action by the state. Let's say the opinion letter had gone the other way. Let's say that Arkansas had sought an opinion letter and and didn't get the answer it wanted. Yes. Could Arkansas still have said, well, that's very nice. Absolutely. Thank you very much, but we disagree. We're going to bring enforcement action anyway. That's absolutely right. And then if they did that. You're right. Yes. They could have. Yes. And what would have happened? The opinion letter would not have bothered them in any way. Would the Department of Labor have then intervened or done anything to back up its opinion letter? The most we would do, we would not bring an action to restrain the state proceedings. We would at most file an amicus brief in the course of the adjudicatory proceedings consistent with what we said in our opinion letter. That amicus brief would be entitled to the same deference basically as the opinion letter. Maybe a bit more under the our case, but certainly it would only be entitled to, it would not be entitled to Chevron deference. It would be entitled to Skidmore type deference. So absolutely the state of Arkansas could go forward with the proceedings of the trustees would defend on the ground that the matters preempted. They would bring forth the department's opinion letter and the state adjudicatory officials whether it's a court tribunal or administrative tribunal would take the department's views and give them whatever weight that they felt appropriate. But in no way would make an independent preemption issue. The state court would decide for itself whether or not ERISA preempted the state law. It's simply not a ERISA preemption is not a question over which the Department of Labor has any adjudicatory authority. And so again the state court would simply give our opinion whatever weight it In a different context that's what happened in the Christensen versus Harris County case that I cited in my brief which was a case arising under the Fair Labor Standards Act. The administrator of the Wage and Hour Division issued an opinion letter going against the city of Houston's practices. The city of Houston decided to go forward with its practices took the case up on to the Supreme Court and its position was vindicated. Thank you. We've got a minute left. Your Honor, in rebuttal this is not necessarily about the opinion letter because the opinion letter said in their opinion we are a MIWA. It doesn't matter in this circuit. Kroll versus Gen Life clearly said you can be a MIWA and as long as you are a trust of a single employer plan you can still be exempt from state regulation. That's the issue here. That's what we We didn't enclose that in our argument, Your Honor. We did address that. You raised it in the district court? In the district court? Absolutely. And also in Oh, I'm sorry. Are you referring to the district court in Texas or Arkansas? This district court. This district court? Yes. We did raise that. We raised the issue of Kroll versus Gen Life but the judge didn't want to hear it. He said he didn't want to address that issue. He said as far as he was concerned Arkansas had decided this matter. He was wrong because Arkansas didn't decide what we were asking for. And Arkansas only said in its cease and desist order that us as Univiva, a 501c9 trust cannot sell insurance. That's what they said. That's the only thing they said. And they also said yes, you're a MIWA, again here we are, we don't have as fiduciaries then the ability to go ahead and take an action on that because there were no fines there were no rights of way. They just said do not sell insurance in the state of Arkansas. And we can't do that anywhere. Is there a complaint? Yes, Your Honor. If I look at your complaint I'll find it there. Your Honor? If I look at your complaint I'll find it there? Yes. Okay, thank you. Thank you. Mr. Saab, you have a chance to address. Okay. We'll next hear argument in Duarte Arzate v. Ashcroft
judges: Kozinski, O'scannlain, Silverman